Argued and submitted March 3, 2000, decision of the Court of Appeals reversed; order of the Psychiatric Security Review Board vacated, and case remanded to the Board for further proceedings March 1, 2001

ROBERT W. HANSON,
*Petitioner on Review,*

*v.*

PSYCHIATRIC SECURITY REVIEW BOARD,
*Respondent on Review.*

(95-1356; CA A91909; SC S46302)

19 P3d 350

Harris S. Matarazzo, Portland, filed the brief and argued the cause for petitioner on review.

Katherine H. Waldo, Assistant Attorney General, Salem, filed the brief and argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, and Leeson, Justices.**

CARSON, C. J.

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case. Kulongoski, Riggs, and De Muniz, JJ., did not participate in the consideration or decision of this case.

## CARSON, C. J.

This is a proceeding for judicial review of an order of the Psychiatric Security Review Board (PSRB), denying petitioner's request for discharge. The PSRB concluded that petitioner, who was diagnosed as suffering from alcohol abuse, was affected by a mental disease or defect under OAR 859-10-005(5) and (6) (1987) (set out below). Based upon that conclusion, the PSRB ordered that petitioner remain under the PSRB's jurisdiction. The Court of Appeals affirmed. *Hanson v. PSRB*, 156 Or App 198, 965 P2d 1051 (1998). We reverse the decision of the Court of Appeals, vacate the PSRB's order, and remand the case to the PSRB.

Petitioner's confinement with the PSRB stemmed from an incident in September 1994, in which petitioner, without warning or provocation, stabbed a man in the chest with a knife. Petitioner was charged with attempted murder and first-degree assault. Following a bench trial in December 1994, the trial court entered an order on January 31, 1995, finding petitioner guilty except for insanity of all charges. In reaching its decision, the court reviewed the police report and petitioner's psychiatric records, which indicated that petitioner had been suffering from an alcohol-induced delusion that the man who he had stabbed had intended to kill him. Based upon those reports, the court found that petitioner suffered from a mental disease or defect when he had engaged in his criminal conduct and that he presented a substantial danger to others. Consequently, the court placed petitioner under the PSRB's jurisdiction, and the PSRB had petitioner admitted to the Oregon State Hospital (OSH).

In 1995, petitioner requested a discharge under ORS 161.341(4),[1] upon the ground that he no longer suffered from

---

[1] ORS 161.341 provides, in part:

"(4) Any person who has been committed to a state hospital designated by the Mental Health and Developmental Disability Services Division for custody, care and treatment or another person acting on the person's behalf may apply to the board for an order of discharge or conditional release upon the grounds:

"(a) That the person is no longer affected by mental disease or defect;

"(b) If so affected, that the person no longer presents a substantial danger to others; or

"(c) That the person continues to be affected by a mental disease or defect and would continue to be a danger to others without treatment, but that the

a mental disease or defect. The PSRB held a hearing in December 1995 to consider petitioner's request. At that hearing, Dr. Russell, a physician at OSH, testified that petitioner was suffering from the Axis I[2] disorders "alcohol abuse" and "alcohol-induced psychotic disorder, with delusions, resolved."

The PSRB denied petitioner's request, finding, among other things, that:

"2. [Petitioner] is affected by a mental disease or defect as demonstrated by the underlying facts shown by the evidence, including the expert testimony of Frank Russell, M.D., at the hearing, to the effect that [petitioner] suffers from the Axis I diagnosis of alcohol abuse and alcohol-induced psychotic disorder with delusions, resolved. He testified that the Axis I diagnosis of alcohol abuse can substantially impair at least one important area of [petitioner's] functioning. Although Dr. Russell stated that, in his opinion and that of other members of the treatment team, this does not constitute a mental disease or defect, *the Board finds that under its administrative rules, OAR 859-10-005(5) and (6), [petitioner] does suffer from a mental disease or defect.* This finding is further supported by the information contained in Exhibits 7, 8, 12 and 18.

"3. [Petitioner], without adequate supervision and treatment, would continue to present a substantial danger to others as demonstrated by the underlying facts shown by the evidence, including the circumstances surrounding the crimes for which he was placed under the jurisdiction of the Psychiatric Security Review Board[.]"

(Emphasis added.)

Based upon those findings, the PSRB concluded that:

---

person can be adequately controlled and given proper care and treatment if placed on conditional release."

[2] "Axis I" refers to the classification system of the Diagnostic and Statistical Manual of Mental Disorders (DSM). The DSM is a reference work compiled by the American Psychiatric Association that categorizes mental disorders. The DSM uses a multiaxial system for classifying mental disorders. The DSM has undergone various revisions since its first edition. As explained later in this opinion, Russell consulted the *DSM-IV* in making his diagnosis. Under the *DSM-IV*, Axis I is reserved for all disorders except for "Personality Disorders and Mental Retardation (which are reported on Axis II)." *DSM-IV* at 25. *See generally Mueller v. PSRB*, 325 Or 332, 339-40, 937 P2d 1028 (1997) (describing DSM and its relevance to PSRB proceedings).

"1. [Petitioner], being affected by a mental disease or defect which, when active, renders him a substantial danger to others, is under the jurisdiction of the Psychiatric Security Review Board.

"2. [Petitioner] is a proper subject for conditional release; however, the supervision and treatment necessary are not currently available in the community. Therefore, it would not be in the best interest of justice and the protection of society to release him at this time."

Petitioner sought judicial review of the PSRB's order and, as noted above, the Court of Appeals affirmed. We allowed review to determine whether the PSRB erred in concluding that petitioner's alcohol abuse diagnosis constituted a mental disease or defect under OAR 859-10-005(5) and (6) (1987).

The legislature has not defined the phrase "mental disease or defect" directly, other than to exclude from that phrase the following abnormalities:

"* * * an abnormality manifested only by repeated criminal or otherwise antisocial conduct * * * [and] any. abnormality constituting solely a personality disorder."

ORS 161.295(2). In 1985, pursuant to ORS 161.387(1), the PSRB adopted rules in which it incorporated the foregoing statutory exclusions, OAR 859-10-005(4) (1987),[3] and defined the terms "mental disease" and "mental defect," OAR 859-10-005(5) and (6) (1987). Before a 1995 amendment, those rules, upon which the PSRB based its order in this case, defined those terms as follows:[4]

"(5)    * * * Mental disease is defined as any diagnosis of mental disorder which is a significant behavioral [sic] or psychological syndrome or pattern that is associated with

---

[3] OAR 859-10-005(4) (1987) provided, in part:

"(b) For offenses committed on or after January 1, 1984, the term 'mental disease or defect' does not include any abnormality constituting solely a personality disorder."

[4] Although the PSRB issued its order in this case after the 1995 amendment, we conclude that the PSRB applied OAR 859-10-005 (1987), because the 1995 amendment renumbered the provisions defining "mental disease" and "mental defect" as OAR 859-10-005(4) and (5). Had the PSRB applied the most current version, OAR 859-10-005 (1995), its order would have cited OAR 859-10-005(4) and (5), not OAR 859-10-005(5) and (6).

distress or disability causing symptoms or impairment in at least one important area of an individual's functioning and is defined in the *current* Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association.

"(6)  * * * Mental defect is defined as mental retardation, brain damage or other biological dysfunction that is associated with distress or disability casuing [*sic*] symptoms or impairment in at least one important area of an individual's functioning and is defined in the *current* Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association."

OAR 859-10-005 (1987) (emphasis added).

Petitioner asks this court to vacate the PSRB's order. As explained below, we conclude that the PSRB's order should be vacated because the order fails to comply with this court's prior holdings in respect of OAR 859-10-005 (1987).

In *Osborn v. PSRB*, 325 Or 135, 147, 934 P2d 391 (1997), this court held that the PSRB may enact administrative rules that define the terms "mental disease" or "mental defect," in part, by referring to the DSM. However, in *Osborn*, this court also held that the "current" DSM, which is incorporated by reference in the definitions of "mental disease" and "mental defect" in OAR 859-10-005(5) and (6) (1987), means the *DSM-III*, because that was the edition that was in effect at the time when the PSRB adopted the rule. 325 Or at 147. Because the PSRB in *Osborn* had used a version different from the *DSM-III*, this court vacated the order at issue upon the ground that the PSRB lacked substantial evidence to support its conclusion that the petitioner's diagnosis constituted a mental disease or defect under OAR 859-10-005(5) and (6) (1987). *Id.* at 150; *see also Rios v. PSRB*, 325 Or 151, 934 P2d 399 (1997) (same result in similar circumstances).

As in *Osborn* and *Rios*, the PSRB in this proceeding used a version of the DSM other than the *DSM-III* to conclude that petitioner suffered from a mental disease or defect under OAR 859-10-005(5) and (6) (1987). The PSRB relied upon Russell's testimony to identify petitioner's diagnosis and to conclude that alcohol abuse is a mental disease or defect under OAR 859-10-005(5) and (6) (1987). The PSRB

also relied upon Exhibits 12 and 18, presented in the proceeding below, to support its conclusion. Although Russell did not testify about which version of the DSM he had used to diagnose petitioner, Exhibits 12 and 18, which were copies of different progress note updates that Russell had signed, indicate that Russell relied upon the *DSM-IV*, not the *DSM III*, to make his diagnosis.[5] Because OAR 859-10-005(5) and (6) (1987) required the application of the *DSM-III*, and because we do not know if that version would have made a difference in petitioner's case, we vacate the PSRB's order and remand for further proceedings.

The decision of the Court of Appeals is reversed. The order of the Psychiatric Security Review Board is vacated, and the case is remanded to the Board for further proceedings.

---

[5] We note that the 1995 amendments to OAR 859-10-005 designate the *DSM-IV* as the pertinent reference for classifying "mental diseases" and "mental defects."